Gregory et al. *v.* Harrington et al.

GREGORY, TILTON & CO., *v.* LEWIS HARRINGTON, AND TRUS-
TEE SAMUEL HARRINGTON, AND CLAIMANTS JOEL HARRING-
TON, GEORGE MERRILL AND ALDEN HARRINGTON.

*Fraudulent Transfer.    Trustee Process.*

If one sell property with the view of defrauding his creditors, and the pur-
chaser, participating in such fraudulent intent, execute notes for the value of
the property, and these notes are transferred by the vendor to a *bona fide*
holder, and notice of such transfer be given to the maker, the latter will not
only be liable to pay such notes to the holder, but may also be charged as
trustee of the vendor by reason of his participation in the fraudulent sale.
PIERPOINT, J.

If one sell property and take the purchaser's notes for the price, with the
intention to withdraw the property from the reach of his creditors gener-
ally, but to turn out the notes to particular creditors whom he desires to
prefer, and he does so transfer them, the sale will not be void as to his cred-
itors, and the purchaser, though participating in the vendor's design, will
not be chargeable as his trustee by reason of the receipt of such property.

TRUSTEE PROCESS.    The Commissioner reported that on the
9th of October, 1857, the trustee Samuel Harrington purchased
of the defendant Lewis Harrington, a store and the land on
which it stood, in Walden, together with the stock of goods
therein, for the price of eighteen hundred dollars; that in pay-
ment of this price the trustee released the defendant from an
indebtedness to him of five hundred dollars, and also executed
and delivered to the defendant four notes of that date, payable to
the defendant, or bearer, one for two hundred dollars, payable
on demand, two for five hundred dollars, each payable in four
and five years from date respectively, and one for one hundred
dollars, payable in six years from date, all with interest annually;
that prior to the service of the writ in this cause upon the trus-
tee all these notes had been transferred to the claimants by the
defendant, the two five hundred dollar notes to Joel Harrington,
the two hundred dollar note to Merrill, and the one hundred dol-
lar note to Alden Harrington, and that in the case of each note
notice of such transfer was given by the person to whom it was
transferred to the trustee prior to the service of this trustee process
upon him; that each of the claimants either had absolute and

*bona fide* claims against the defendant, or were liable as his surety, to a sum exceeding the amount of the notes transferred to him, and that such notes were transferred in payment of such absolute claims and as security for such liability as his sureties, and also that all the debts of the defendant upon which the claimants were liable as his surety were unpaid at the time of the hearing before the commissioner.

The commissioner further reported that the trustee had been in the employment of the defendant as clerk in his store for nearly a year previous to the sale by the defendant to the trustee, and that he knew that the defendant was largely in debt and embarrassed; that just prior to such sale several suits had been commenced against the defendant by his creditors and that the trustee at that time spent several days trying to raise money for the defendant by a mortgage of the latter's store so as to relieve him from his embarrassment, but without success; and that they thereupon made the trade above described; that after such purchase the trustee continued to sell the goods mostly for cash, but when he sold on credit he charged them upon the same book which the defendant had previously used in the store, and on the same pages and under the same headings as the charges made by the defendant, and with nothing but the date to distinguish the charges for the trustee's sales from those previously made by the defendant; that whatever accounts were settled on such book subsequently to the trustee's purchase, contained nothing indicating how much was received by the defendant and how much by the trustee, but that they testified that they divided them according to the dates of the charges; that an inventory of the goods had been taken about four weeks previous to the sale, but none was taken when the sale was made, and the goods were estimated as worth about one thousand dollars; that the trustee, after the purchase, bought no goods to fill up the stock, but sold the goods just as he could during the winter of 1857–8, and in the spring sold the balance to one Stanton for three hundred and thirty-five dollars, taking a horse as part payment; that the trustee, in the spring of 1859, exchanged the store for a farm, and sold the farm to the defendant's wife, who had some private property of her own, and took her notes in payment therefor:

and that previous to the sale by the defendant to the trustee the latter was worth little or nothing except his claim against the defendant, which he discharged as part of the consideration for the purchase.

The commissioner further reported that from the foregoing circumstances, he found that the sale to the trustee by the defendant was coverable, and that thereby the latter designed to put his property beyond the reach of his creditors generally, and delay them in the collection of their claims, and to pay the trustee the amount of his demands, and to transfer the trustee's notes, given for the balance of the purchase money, to such creditors as the defendant desired to prefer, and that the trustee was aware that such was the defendant's purpose, but that it was unknown to the claimants.

Therefore the commissioner reported that, in his opinion, the trustee was not chargeable, and that the claimants were entitled to hold the trustee's notes transferred to them respectively.

Upon this report the County Court, at the December Term, 1859, Poland, J., presiding, adjudged that the trustee be discharged, and the claimants hold the notes transferred to them by the defendant, to which the plaintiffs excepted.

*Stoddard & Clark*, for the plaintiffs.

*Bliss N. Davis*, for the trustee and claimants.

PIERPOINT, J.   The only question presented for our consideration is, as to the validity of the sale of the store and goods, by the principal debtor, to the trustee, and for which the notes were given, that were subsequently transferred to the claimants.   The case shows that the notes were regularly transferred to the claimants for valuable consideration, and without any knowledge on their part, at the time of receiving them, of any of the facts, that are now urged as tending to impeach the transaction as to the creditors of the principal debtor ; hence, whatever conclusion we may arrive at, as to the character of that transaction, as between the original parties to it, and such creditors, the right of the claimants to hold, and enforce the notes against the trustee, is

unquestionable; indeed the plaintiffs do not claim to hold the trustee by reason of these notes, but on the ground that the sale and transfer of the property was fraudulent as to the creditors: so that although the sale may be binding between the parties to it, and the trustee holden to pay the notes, still, it being fraudulent as to the creditors, they have the right to charge him as trustee, the same as though he had the property in his hands without any agreement to purchase; and this claim is undoubtedly well founded if the transaction was in fact a fraud upon the creditors.

Was the transaction fraudulent? The commissioner has reported the facts as they transpired between the principal debtor and the trustee, together with the intent, object and purpose, in pursuance of which they acted in making the sale, and the use to which the principal debtor put the avails, and concludes with the statement, that he believed that the sale was coverable and that thereby the defendant designed to put his property beyond the reach of his creditors *generally*, so that he could turn it out to *particular ones* as he saw fit. The commissioner has also found that he did turn out the avails to pay debts, and to secure those who had signed with him, and who were holden for him as surety. Some of the language made use of by the commissioner would seem to convey the idea that he thought the transaction was fraudulent, but when the whole is taken together, and in connection with the fact that he adjudged the trustee not liable, it is apparent he entertained no such idea. ·All that the commissioner can fairly be said to mean, is, that it was the intention of the principal debtor to prefer some of his creditors to others, and that he did so, and he finds that all of the avails of his property so sold, were applied in payment of, and to secure honest, *bona fide* debts. Can such a transaction be fraudulent as to the other creditors? We think it clear that it cannot. The doctrine has ever been recognized in this State, that a debtor may pay or secure one creditor, to the exclusion of another. Under any other rule it would be unsafe for a debtor to pay one debt unless he was able to pay all, or for a creditor to take his pay until he had first ascertained that his debtor was able to pay

all his other creditors, as to do so might subject him to the penalty imposed by the statute.

In this case, if the principal debtor had transferred the property itself to the same persons to whom he transferred the notes he took for it, and for the same purpose, no person would claim that he had not a perfect legal right to do so; or if he had sold the property and taken the money for it, and had applied the money in the same manner, it would not have been fraudulent. The purpose was not to keep his property away from his creditors, but to pay it to his creditors, he exercising his legal right to prefer such as he chose. Fraud does not consist in transferring property with a view to prefer one creditor to another, but in transferring property with the intent to prefer one's self to all his creditors.

The statutes regulating assignments have no application to a case like the present; there was no attempt to make an assignment for any purpose; it was a simple sale of the property, and a transfer of the proceeds to his creditors. This, we have already seen, he had a legal right to do. We find, therefore, no error in the judgment of the County Court discharging the trustee, and declaring the claimants entitled to hold the notes.

Judgment affirmed.